UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

James Satchel, *et al.*,

      Plaintiffs,

v.                            Case No. 16-11518

Dayton Township, *et al.*,           Sean F. Cox
                                   United States District Court Judge

      Defendants.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' Counsel brought this case on behalf of three Plaintiffs, who asserted twelve separate counts against nine different Defendants. Several defendants and claims have since been dismissed. The matter is currently before the Court, following the close of discovery, on a Motion for Summary Judgment filed by the remaining Defendants that seeks summary judgment as to all remaining claims. The parties have briefed the issues and Court heard oral argument on June 7, 2018. For the reasons set forth below, the Court shall GRANT the motion as to the remaining claims because: 1) the remaining individual Defendants are entitled to absolute legislative immunity for many of the alleged actions that form the basis of Plaintiffs' claims; 2) the individual Defendants are entitled to qualified immunity as to Plaintiffs' federal claims; 3) Plaintiffs have failed to establish municipal liability on the part of the Township; 4) Plaintiffs' ethnic intimidation claims fail under the plain language of the Michigan statute because Plaintiffs have not alleged, and have provided no evidence to establish, that they suffered injury to their person or damage to their property; and 5) Plaintiffs' claims for intentional infliction of

1

emotional distress fail because, in response to the motion, Plaintiffs have not even identified the conduct upon which these claims are based.

## BACKGROUND

Acting through Counsel, Plaintiffs James Satchel, Robert Adams, and Rod Merten (collectively, "Plaintiffs") filed this action on April 27, 2016. Plaintiffs filed the action in federal court based on federal-question jurisdiction and ask the Court to exercise supplemental jurisdiction over the state-law claims in this action. The original complaint asserted twelve different counts against nine different Defendants.

On October 24, 2016, this Court granted a Motion to Dismiss filed by Defendant Richard Horsch, and granted a motion for sanctions, after Plaintiffs' Counsel failed to respond to the motions or show cause orders issued by this Court. Thus, all claims against Horsch were dismissed with prejudice back in 2016.

In an Order issued on August 8, 2017, after a status conference with counsel, this Court allowed Plaintiffs to file an amended complaint, in order to amend allegations as to their conspiracy claims, and allowed Defendants to amend their affirmative defenses. In that same order, the Court allowed Plaintiffs discovery as to the affirmative defense of legislative immunity. Finally, that order dismissed without a prejudice a motion for summary judgment that had been filed by Defendants, and cautioned the parties that "any future motions and responses pertaining to qualified immunity must address each Defendant separately and include an analysis on a claim-by-claim basis." (D.E. No. 43).

Plaintiffs filed a First Amended Complaint (D.E. No. 44) on August 10, 2017. Although Defendant Horsch had already been dismissed, Plaintiffs' Counsel included claims against him

in the First Amended Complaint.

Following the stipulated dismissal of multiple counts and parties, the following claims

now remain pending in this action:

Count I, First Amendment Retaliation Claim (42 U.S.C. § 1983):
1) Satchel asserts claims against Dayton Township and Cook;
2) Adams asserts claims against Dayton Township alone; and
3) Merten asserts claims against Dayton Township and Mocniak.

Count II, First Amendment Retaliation Conspiracy (42 U.S.C. § 1985);
1) Satchel asserts claim against Cook, Steel and Mocniak; and
2) Merten asserts claim against Cook, Steel and Mocniak.

Count IV, Racial Discrimination (42 U.S.C. § 1983):
1) Satchel asserts claim against Dayton Township and Cook; and
2) Adams asserts claim against Dayton Township.

Count V, Conspiracy to Commit Racial Discrimination (42 U.S.C. § 1983):
1) Satchel asserts claim against Cook, Steele and Mocniak.

Count VI, Ethnic Intimidation (Mich. Comp. Laws § 750.147b):
1) Satchel asserts claim against Chris and Amanda Gusek; and
2) Adams asserts claim against Chris and Amanda Gusek.

Count VIII, Intentional Infliction of Emotional Distress (under Michigan law):
1) Satchel asserts claim against Cook, Steele, Mocniak, Kilmer, Chris Gusek, and
Amanda Gusek;
2) Adams asserts claim against Chris and Amanda Gusek; and
3) Merten asserts claim against Cook, Steel, and Mocniak.

(*See* Pls.' & Defs.' Stmts. at ¶ 3).

On December 1, 2017, Defendants filed a new Motion for Summary Judgment, that seeks

summary judgment as to all remaining claims.

This Court's practice guidelines, which are expressly included in the Scheduling Order

issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

a. The moving party's papers shall include a separate document entitled
Statement of Material Facts Not in Dispute. The statement shall list in separately

numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 2-3).

In support of their Motion for Summary Judgment, Defendants filed a "Statement of Material Facts Not In Dispute" ("Defs.' Stmt.").

In response to that submission, Plaintiffs filed a "Counter-Statement of Disputed Facts" ("Pls.' Stmt."). That Counter-Statement contains 210 paragraphs and Plaintiffs' Counsel attached 65 exhibits to their response brief.

The following facts are undisputed.

Dayton Township is a Michigan municipal corporation created pursuant to and in accordance with the statutes and Constitution of the State of Michigan. It is governed by a five-member elected Board of Trustees consisting of a Supervisor, Clerk, Treasurer, and two Trustees. Each is elected for a four-year term. (Defs.' & Pls.' Stmts. at ¶¶ 5-6).

Defendant Cook is the elected Supervisor for the Township and has held that position continuously from 2007 to present. (*Id.* at ¶ 7).

Defendant Kilmer is the elected Treasurer for the Township and has held that position

from 1980 to the present. (*Id.* at ¶ 8).

Defendant Mocniak was an elected Trustee for the Township from 2008 to 2012. Mocniak was appointed Township Clerk on August 4, 2014 and served until his resignation in May of 2015. (*Id.* at ¶ 9).

Defendant Amanda Gusek is the Clerk for the Township. She was appointed to that position on January 2, 2016, to fill the vacancy created when (former Defendant) Stacy Phillips resigned as Clerk. (*Id.* at ¶ 10). Defendant Chris Gusek is Amanda's husband and he served as Deputy Clerk for the Township from January 2, 2016 to the present. (*Id.* at ¶ 11). Prior to January 2, 2016, neither Chris nor Amanda Gusek held any elective or appointed office or position with the Township nor were either involved in Township government prior to January 2, 2016. (*Id.* at ¶ 12).

Plaintiff Satchel was elected as Township Trustee in November of 2012. Satchel served as Trustee until the date of his resignation on January 4, 2016. Satchel is black and he resides in the Shay Lake residential development in the Township. (*Id.* at ¶ 13-14).

On December 4, 2012, Satchel was sworn in as Township Trustee at the Tuscola County Clerk's Office. (*Id.* at ¶ 15).

Plaintiff Robert Adams is black and resides in the Shay Lake residential development in the Township. He has never held an elected or appointed position in Dayton Township government. (*Id.* at ¶ 16).

Plaintiff Rod Merten is white. Merten resides in the Township for a portion of the year and spends the remainder of the year in Florida. He has never held an elected or appointed position in the Township. (*Id.* at ¶ 17). Merten moved to the Township in 2013 and began

attending Township Board meetings in 2014. (*Id.* at ¶ 18).

By all accounts, Satchel, Adams, and Merten had various conflicts and disputes with Defendants, and various residents of the Township, over a period of several years.

The Court does not include here the various facts and allegations that transpired over the years, including events and comments made at a multitude of Township meetings. Many facts alleged by Plaintiffs have no bearing on the claims against the remaining individual Defendants. But the Court does include here some undisputed facts that relate to a "KKK Picnic sign."

On December 15, 2014, a sign which read "KKK Picnic" was placed on a vacant parcel of land owned by Defendant Chris Gusek. (*Id.* at ¶ 19). Neither Satchel, Merten, nor Adams have any firsthand knowledge of the identity of the individual(s) involved in the construction or placement of that sign. (*Id.* at ¶ 20-22).

On December 15, 2014, Plaintiff Adams contacted the Tuscola County Sheriff's Department to report the sign on the property. (*Id.* at ¶ 23). Tuscola County Sheriff Deputy David Kinney investigated the sign incident. (*See* Pls.' Am. Compl. at ¶ 90; Kinney Dep. at 15-40). Kinney testified that he was the lone person investigating the incident. Kinney was unable to determine the identity of the individual(s) involved in the placement of the sign on the property and no criminal charges were brought. (*Id.* at ¶ 25).

## ANALYSIS

### I.     Municipal Liability

In the pending motion, Defendants contend that the Township is entitled to summary judgment because Plaintiffs cannot establish municipal liability.

It is well established that "under § 1983, local governments are responsible only for their *own* illegal acts"; '[t]hey are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original). Plaintiffs who seek to impose liability on local governments under § 1983 must allege and prove that "action pursuant to official municipal policy' caused their injury." *Id*. "A plaintiff bringing a § 1983 claim against a municipality must therefore identify the policy or custom that caused her injury." *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).

Defendants content that "Plaintiffs are unable to identify any policies, practices, or patterns adopted, promulgated or engaged in by Dayton Township which violated any federally-protected rights. Rather, Plaintiffs' Complaint merely alleges that the conduct of *individual* Defendants allegedly violated their constitutional rights." (Defs.' Br. at 4) (emphasis in original).

In response, Plaintiffs' brief generally discusses concepts relating to municipal liability. (*See* Pls.' Br. at 1-4). But it does not identify any policy or custom that Plaintiffs allege caused their injuries.

Moreover, if Plaintiffs cannot establish a constitutional violation by the individual Defendants, then there can be no municipal liability. That is because for a municipality to be liable under 42 U.S.C. § 1983, a plaintiff must show harm caused by a constitutional violation. Thus, "[n]o constitutional violation means no municipal liability." *Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017).

## II.     Absolute Legislative Immunity

Defendants' motion asserts that the remaining Defendants, who were all local Township officials, are entitled to absolute legislative immunity for all of the alleged actions they took that fall within the sphere of legislative activity.  Defendants' motion asserts that "Plaintiffs' claims regarding individual Defendant's conduct in (1) voting to reimburse Board members without sufficient back-up documentation; (2) awarding public contracts without competitive bids, (3) voting to censure Plaintiff and (4) failing to appoint Plaintiffs, Adams and Merten to open appointment positions were all performed in Defendants' legislative capacity at Township Board meetings." (Defs.' Br. at 6).

It is well-established that "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998).  In *Bogan*, the Supreme Court extended that same immunity to local legislators, holding that local legislators are "absolutely immune from suit under § 1983 for their legislative activities." *Id*.  It reasoned as follows:

> The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. *See Spallone v. United States,* 493 U.S. 265, 279, 110 S.Ct. 625, 634, 107 L.Ed.2d 644 (1990) (noting, in the context of addressing local legislative action, that "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process"); *see also Kilbourn v. Thompson,* 103 U.S., at 201–204 (federal legislators); *Tenney, supra,* at 377, 71 S.Ct., at 788–89 (state legislators); *Lake Country Estates,* 440 U.S., at 405, 99 S.Ct., at 1179 (regional legislators). Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. *See Tenney, supra,* at 377, 71 S.Ct., at 788–89 (citing "the cost and inconvenience and distractions of a trial"). And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the

> threat of civil liability. *See Harlow v. Fitzgerald,* 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982).

*Id.* at 52.

"In other words, local legislators will not face personal liability for their legislative activities." *Smith v. Jefferson Cty. Bd. of Sch. Commr's*, 641 F.3d 197, 218 (6th Cir. 2011). Even officials who are not part of the legislature are entitled to legislative immunity when they perform legislative functions. *Id.*

The determination of whether an activity is "legislative" must be made without regard to the legislators' subjective intent. *Bogan*, 523 U.S. at 54. Whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* The proper inquiry, therefore, is whether, stripped of all considerations of intent and motive, the actions were legislative. *Id.* at 55.

Actions are legislative when "they are integral steps in the legislative process." *Bogan,* 523 U.S. at 55. Signing an ordinance into law is "quintessentially legislative," *id.,* but the definition is broader and covers other aspects of the legislative process, including a legislative committee's "deliberative and communicative processes." *Eastland v. U.S. Servicemen's Fund,* 421 U.S. 491, 503-04 (1975); *see also National Ass'n of Soc. Workers v. Harwood,* 69 F.3d 622, 630 (9th Cir. 1995) (absolute immunity covers "not only speech and debate per se, but also voting, ... circulation of information to other legislators, ... participation in the work of legislative committees, ... and a host of kindred activities." (citations omitted)).

Defendants direct the Court to *Timmon*, wherein a district court within the Sixth Circuit held that a "city council is acting in its legislative capacity when it exercises its investigatory power by presiding over a public-comment period." *Timmon v. Wood*, 633 F.Supp.2d 453, 460

(W.D. Mich. 2008). That is because taking public comment is an "integral– and required – part of the Council's investigatory and information-gathering functions." *Id.* Thus, the court held that the counsel members' alleged actions toward the plaintiff during the public comment period "fell within the legitimate legislative sphere," as explained there:

> Defendants' actions toward Plaintiff during the public-comment period at each of the meetings fell within the legitimate legislative sphere. Defendants furthered the Council's investigatory and information-gathering needs when they presided over the public-comment period. Directing a speaker's comments to relevant, city matters is integral to furthering the recognized legislative function of determining the "priorities of the city and the services the city provides its constituents." *Canary v. Osborn,* 211 F.3d 324, 331 (6th Cir. 2000); *see Avila v. Witkowski,* 219 Fed.Appx. 62, 62 (2d Cir. 2007) (holding that a local legislator was entitled to legislative immunity when he argued with a fellow legislator during a public meeting, demanded that she leave the committee, and threatened to remove her from the meeting for being out of order). Defendants' role during public comment was to facilitate information gathering and to maintain orderly and relevant public discussion to further that role. Defendants may have performed these legislative functions in contravention of Plaintiff's First Amendment rights, but their conduct was nonetheless part of gathering information during the public-comment period of a regularly scheduled Council meeting. They were not taking actions that were merely "casually or incidentally related to legislative affairs." *Hansen v. Bennett,* 948 F.2d 397, 402 (7th Cir. 1991). Instead they were overseeing and guiding the portion of a legislative session dedicated to "investigating ... legislative issue[s]." *Kamplain v. Curry County Bd. of Comm'rs,* 159 F.3d 1248, 1251 (10th Cir. 1998). Their actions were, in other words, an integral part of the Council's gathering of information necessary to effect wise and effective legislation. Accordingly, Defendants' actions were within the "legitimate legislative sphere," and Defendants are entitled to absolute immunity from Plaintiff's suit.

*Id.* at 460-61; *see also Hogan v. Township of Haddon*, 278 F. App'x 98, 104 (3d Cir. 2008) (holding that the mayor's use of a gavel to limit the time the commissioner spoke at meetings and his actions in establishing the time and agendas for meetings were entitled to legislative immunity.); *see also Afjeh v. Village of Ottawa Hills*, 2010 WL 1795973 (N.D. Ohio 2010) (Noting that "[s]everal courts have held that moderating the speech and activity of public

attendees at a local legislative meeting is legislative activity protected by absolute immunity and collecting cases).

In response to Defendants' assertion of absolute legislative immunity, Plaintiffs' brief contains a section that generally discusses the doctrine of absolute legislative immunity. (Pls.' Br. at 4-8). But Plaintiffs' brief contains no analysis as to whether the remaining Defendants are entitled to absolute legislative immunity with respect to their various alleged actions in this case. That is, Plaintiffs have not identified any actions taken by the remaining Defendants that they claim *are not* protected by the doctrine of legislative immunity.

Based on what has been presented, it certainly appears that many of the alleged actions of Defendants were within the "legitimate legislative sphere," such as presiding over the public-comment period, presiding over the agenda of meetings, and voting on various matters up for consideration by the Township. The remaining individual Defendants would be entitled to absolute immunity as to such actions. And to the extent that any claims against these individual Defendants are not barred by absolute legislative immunity, the Court must consider whether they are entitled to qualified immunity.

## III. Qualified Immunity

To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish: 1) the deprivation of a right secured by the Constitution or laws of the United States; 2) caused by a person acting under the color of state law. *Dominguez v. Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir. 2009).

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.; Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation. *Dominguez*, 555 F.3d at 549.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994). Here, the officials have raised the issue in the instant Motion for Summary Judgment, filed after the close of discovery.

"Qualified immunity is an affirmative defense, and a defendant bears the burden of pleading it in the first instance." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). "Once the defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to demonstrate" both that the challenged conduct violated a constitutional right and that the right was clearly established. *Id.* "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id.*; *see also Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015) ("Once a defendant invokes qualified immunity, the plaintiff bears the burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendants's alleged misconduct.").

"Clearly established" means that, at the time of the official's conduct, the law was "sufficiently clear" that every reasonable official would understand that what he or she is doing

is unlawful. *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018). "In other words, existing law must have placed the constitutionality of the [official's] conduct 'beyond debate.'" *Id*. "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. Furthermore, clearly established law should not be defined at a high level of generality. Rather, the clearly established law must be particularized to the facts of the case. *King v. Harwood*, 852 F.3d 568, 582 (6th Cir. 2017).

Moreover, it is well established that when there is more than one individual defendant in a case, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

With these concepts in mind, Plaintiffs' remaining federal claims are addressed below.

### A. First Amendment Retaliation Claims (Count I)

Count I of Plaintiffs' First Amended Complaint is titled, "Retaliation for Exercising First Amendment Right of Free Speech in the Right to Vote and Hold Political Office as Applied Through the Equal Protection Clause of the Fourteenth Amendment." In it, Plaintiffs allege that Defendants, while acting under color of law, "deprived the Plaintiffs of their rights to free speech."

### 1. Can Plaintiffs Establish A Constitutional Violation?

The first prong of the qualified immunity analysis is whether, viewing the evidence in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred.

The parties agree that a three-part analysis applies to First Amendment retaliation claims.

In its "*en banc* decision in *Thaddeus-X v. Blatter*," the Sixth Circuit "crystalized the basis for First Amendment retaliation claims into a three-part analysis. To establish an affirmative case, the plaintiff must show (1) that [he] engaged in protected conduct; (2) that there was an adverse action taken against [him] 'that would deter a person of ordinary firmness from continuing to engage in the conduct'; and (3) that 'there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Cameron v. Grainger Cnty.*, 274 F. App'x 437, 441 (6th Cir. 2008) (quoting *Thaddeus X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999)).

The "plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.*

### a.     Merten's Claim Against Mocniak

In response to Defendants' motion, Plaintiffs' Counsel includes separate paragraphs that apply to each of the Plaintiffs. The Court will first look to Merten's claim, but they are all very similar.

Plaintiffs' counsel first identifies the alleged protected speech that Merten engaged in. He does so in a lengthy paragraph that lists no less than seventeen different alleged actions by Merten that constitute protected activity, that took place at various times over a period of several years.

Plaintiffs' counsel then includes a paragraph that identifies no less than eight separate

alleged adverse actions, that were allegedly taken against Merten, again during a time period of several years. (*See* Pls.' Br. at 16). Although Merten's claim is brought against Mocniak, Plaintiffs' counsel includes alleged adverse actions that were taken by individuals *other than* Mocniak. For example, he asserts that "Steele performed a background check" on him and shared that information with Cook. The Court fails to see how such allegations can establish a claim against Mocniak.

Merten also includes alleged adverse actions without specifying who took them. For example, Merten includes in his list of adverse actions "allowing people to heckle Merten during meetings." (*Id.* at 16). Moreover, regardless of who is alleged to have taken some of these alleged adverse actions, they appear to be covered by absolute legislative immunity (e.g., how the Township meetings and public comment were managed, and appointments by the Board).

Before proceeding to causal connection, Plaintiffs' brief stresses that temporal proximity can establish a causal connection. It then includes a paragraph that says "Merten establish [sic] causation because:" followed by various alleged facts that Plaintiffs somehow believe establish a causal connection between the list of protected activity and the list of adverse actions, which are alleged to have occurred over a period of several years. The facts alleged in this paragraph include no references to dates and, therefore, the Court fails to see how Plaintiffs believe they have established a causal connection via temporal proximity. The Court also fails to see how the various alleged facts would establish a causal connection that would support a claim against Mocniak. For example, in this paragraph Merten lists "Cook admits that Merten's concerns about the garbage contract lead to a discrepancy with the charges in the Township's favor" – without providing any explanation as to how or why that would show a causal connection.

This Court has not seen a plaintiff attempt to establish a first amendment retaliation claim in this manner. Typically, you have a plaintiff identify the protected speech, which is then followed by some specific adverse action, and the plaintiff then presents circumstantial evidence to establish that the protected conduct motivated that adverse action. Again, the plaintiff has to establish a causal connection between the protected activity and the adverse action. But here, Plaintiffs' Counsel has essentially included a long list of actions that constitute protected activity, taken over a period of several years, then included a long, vague list of alleged adverse actions, taken over a period of years, and then included a list of various alleged facts that Plaintiffs believe somehow establish a causal connection between the various instances of protected activity and the numerous alleged adverse actions. It is as if counsel is leaving it to the Court to discern some viable claim.

### b. Satchel And Adams's Claims

Plaintiffs' Brief does the very same thing as to the First Amendment retaliation claims asserted by Satchel and Adams. That is, it offers paragraphs comprised of lists of various facts with no explanation as to how each Plaintiff can show a causal connection.

### 2. Clearly Established

Even if these Plaintiffs could establish a constitutional violation by these Defendants, then Plaintiff would also have to satisfy the clearly established prong. In order to do so, Plaintiffs would have to identify the clearly established law, particularized to the facts of this case, that would put these Defendants on notice that their conduct was unlawful.

Plaintiffs have not done so. All they have done is reference this Court's decision in *Tracer* (which can readily be distinguished) and assert that the general "law of freedom of

speech" has been clearly established. (Pls.' Br. at 9). That is insufficient.

The Court concludes that Plaintiffs have failed to meet their burden of establishing that the remaining individual Defendants are not entitled to qualified immunity as to this count.

**B.** **"Racial Discrimination Against Plaintiffs' Right To Vote And Hold Political Office As Applied Through The Equal Protection Clause Of The Fourteenth Amendment" (Count IV)**

To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class. *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

Although Plaintiffs' First Amended Complaint asserted this count by Plaintiffs Satchel and Adams against eight different individual defendants, and the Count itself only refers to "Defendants" without identifying any conduct by any specific Defendant, much of this count has been dismissed by Plaintiffs. The only individual against whom this count is now asserted is Cook, by Satchel. But Adams purports to assert this count against the Township by itself.

### 1. Adams's Claim Against The Township

Adams purports to assert this count against the Township alone. Count IV references only "Defendants" without specifying any conduct by any individual Defendant. This count makes no references to any customs or policies of the Township.

Again, "under § 1983, local governments are responsible only for their *own* illegal acts"; '[t]hey are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Plaintiffs who seek to impose liability on local governments under § 1983 must allege and prove that "action pursuant to official municipal policy' caused their injury." *Id.* "A plaintiff bringing a § 1983 claim against a municipality must therefore

identify the policy or custom that caused her injury." *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).

This count, however, does not identify any policy or custom of the Township that Adams alleges was the cause of his alleged injury. Thus, Defendants argue in their motion that they are entitled to summary judgment as to this claim by Adams because Adams "does not assert nor can he prove that Dayton Township engaged in an official municipal policy or custom that resulted in racial discrimination" against him.

In response, Plaintiffs' brief contains a single paragraph that addresses liability for the Township, and it references vague allegations as to unidentified white persons being treated differently than Satchel or Adams by the Board without directing the Court to any evidence to support those allegations. Rather, it generally directs the Court to the 210-paragraph Counter Statement filed by Plaintiffs' Counsel.

### 2.    Satchel's Claim Against Cook

In responding to Defendants' challenge to the race discrimination claim, as to Cook's liability, Plaintiffs' briefs consists of the following:

> Cook's Individual Liability. For the same reasons as described above and in Plaintiffs' Counter-Statement of Disputed Facts, Cook [sic] expression of animus against African Americans cause [sic] him to treat Satchel differently from other Board members.

(Pls.' Br. at 22).

Thus, Satchel relies on the same unspecified allegations that Adams relied on (ie., that racial animus was expressed by "by allowing Satchel and Adams to be threatened at Board meetings," that the Board appointed A. Gusek as Clerk knowing she would appoint C. Gusek as her deputy," and that the "Township allowed white Board Members to speak without cutting

18

them off," and "the Board allowed white residents to speak.") Satchel's brief does not, however, direct the Court to evidence to support those allegations.

Rather, Plaintiffs' Brief again generally directs the Court to the 210-paragraph Counter Statement filed by Plaintiffs. Plaintiffs apparently expect the Court to go through those 210 paragraphs, and the 65 exhibits they have filed, and find the facts and supporting evidence for this claim. That is insufficient because it is Plaintiffs' "job to *point to the evidence with specificity and particularity in the relevant brief* rather than just dropping a pile of paper on the district judge's desk and expecting him to sort it out." *Wimbush v. Wyeth*, 619 F.3d 632, 638 n.4 (6th Cir. 2010) (emphasis added).

Moreover, even if there were evidence to support those allegations, it appears that Cook would be entitled to legislative immunity with respect to that alleged conduct (how the Township meetings and public comment were managed, and appointments by the Board).

In addition, even if Satchel could establish this claim against Cook, Plaintiffs' Counsel has not even attempted to meet the clearly established prong of the qualified immunity analysis as to this claim.

### C. Conspiracy Claims

In Counts II and V, Plaintiffs allege conspiracy claims, which are both asserted under 42 U.S.C. § 1985(3).

In Count II, Plaintiffs Satchel (who is black) and Merten (who is white) allege that "[t]wo or more Defendants, by reason of [their] desire to retaliate against Plaintiffs for exercising their right to Free Speech and their right to vote or hold political office," conspired together, in violation of 42 U.S.C. § 1985(3).

In Count V, Plaintiff Satchel (who is black) alleges that "[t]wo or more Defendants, by reason of [their] animus against African Americans," conspired together, in violation of 42 U.S.C. § 1985(3).

To establish a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must prove: 1) a conspiracy involving two or more persons; 2) for the purpose of depriving a person or class of persons of the equal protection of the laws; 3) an act in furtherance of the conspiracy; 4) which causes injury to a person or property, or a deprivation of any right or privilege of citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).

Notably, as explained by the Sixth Circuit in *Moniz v. Cox*, 512 F. App'x 495 (6th Cir. 2013):

> The plaintiff must allege that "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir.1999); *see Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993); *Estate of Smithers ex rel. Norris v. City of Flint,* 602 F.3d 758, 765 (6th Cir.2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it.").

*Id.* at *3; *see also* Pls.' Br. at 21.

Accordingly, as a threshold matter, Count II fails to state a claim under § 1985(3) because – as Plaintiffs' Counsel acknowledged at the June 7, 2018 hearing – it does not allege any race or class-based discriminatory animus on the part of Defendants. *Moniz, supra*, at *4 (the plaintiff's "complaint fails to state a claim under § 1985 because he has not alleged any race or class-based discriminatory animus on the part of" the defendant.).

Unlike Count II, Count V does allege racial discrimination. But Defendants challenge that count on other grounds in the pending motion.

In response to Defendants' motion, however, Plaintiffs only respond to the conspiracy count asserted in Count II. (*See* Pls.' Br. at 22, "In the present case, the Defendant Board Members conspired in their individual capacities to deprive the Plaintiffs *of their First Amendment Right to Free Speech*.") (emphasis added). They did not even respond to the challenges to Plaintiffs' race-based conspiracy count (Count V). As such, they have failed to establish a violation of § 1985(3) by Cook, Steele, and Mocniak and, therefore, they are entitled to qualified immunity.

Also, as this Court recognized in *Green v. Southfield*, 2018 WL 1185277 (E.D. Mich. 2018), conspiracy claims are derivative:

> "Under both federal and Michigan law, civil conspiracy claims are derivative. They are cognizable only insofar as there is an underlying cognizable" claim for a constitutional violation. *Van Buren v. Crawford County*, 2017 WL 3479546 (E.D. Mich. 2017) (citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)); *see also Wiley v. Oberlin Police Dept.*, 330 Fed.Appx. 524, 530 (6th Cir. 2009) (explaining that, '[s]imiliar to the municipal liability claim, [the plaintiff] cannot succeed on a conspiracy claim because there was no underlying constitutional violation that injured her."); *Bauss v. Plymouth Twp.*, 233 Fed.Appx. 490, 500 (6th Cir. 2007); *Thompson v. City of Memphis*, 86 Fed.Appx. 96, 103 (6th Cir. 2004) (explaining that conspiracy claim under § 1985(3) depends on the plaintiff successfully establishing the alleged constitutional violation); *Umani v. Michigan Dept. of Corrections*, 432 Fed.Appx. 453,462 (6th Cir. 2011) (same).

*Id*. at *8. Thus, this conspiracy alleged in Count V fails if Plaintiffs do not have an underlying cognizable race discrimination claim in Count IV.

For all of these reasons, the Court shall grant summary judgment in Defendants' favor as to Counts II and V.

## IV. Ethnic Intimidation Claims

In Count VII, Plaintiffs Satchel and Adams seek civil damages against Defendants Chris Gusek and Amanda Gusek under Michigan's ethnic intimidation statute.

Michigan's ethnic intimidation statute, Mich. Comp. Laws § 750.147b, provides that a "person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:" a) causes physical contact with another person; b) damages, destroys, or defaces any real or personal property of another person; c) threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur. Ethnic intimidation is a felony punishable by imprisonment for not more than 2 years, or by a fine of not more than $5,000.00, or both. Mich. Comp. Laws § 750.147b(2).

The statute also authorizes civil damages in limited circumstances, as it provides, in pertinent part, that "[r]egardless of the existence or outcome of any criminal prosecution, *a person who suffers injury to his or her person or damage to his or her property as a result of ethnic intimidation* may bring a civil cause of action against the person who commits the offense to secure an injunction, actual damages, including damages for emotional distress, or other appropriate relief." Mich. Comp. Laws § 750.147b(3).

Thus, civil damages may only be recovered by "a person who suffers injury to his or her person or damage to his or her property as a result of ethnic intimidation" and a plaintiff who cannot establish such physical injury or property damage cannot recover civil damages. *Dumas v. Hurley Medical Ctr.*, 837 F.Supp.2d 655, 664 (E.D. Mich. 2011) (dismissing claim for civil damages where the Plaintiff failed to allege "any injury or property damage, instead alleging only offensive contact and verbal abuse.")

In the First Amended Complaint, with respect to this count, Plaintiffs Satchel and Adams

only reference "threats of physical harm," being "subjected to the KKK Picnic sign," and being "forced to be subject to numerous verbal attacks." The count does not allege that either Satchel or Adams suffered injury to their person or damage to their property.

Accordingly, Defendants' Motion for Summary Judgment seeks summary judgment as to this count as to both Chris and Amanda Gusek.

In response, Plaintiffs' own brief acknowledges that you have to suffer injury to your person or damage to your property in order to recover civil damages under the language of the statute. (Pls.' Br. at 23). Plaintiffs then cite an unpublished opinion that did not even address that requirement. *McKnight v. Don Massey Cadillac, Inc*., attached as Exhibit MMM to Plaintiffs' Brief). In that case, the plaintiffs filed suit against an automobile dealership, asserting that it violated several statutes, including Michigan's ethnic intimidation act. The trial court granted summary disposition in favor of the defendant and plaintiffs appealed. The Michigan Court of Appeals affirmed. In discussing the ethnic intimidation statute, the court did not address the statute's requirement of injury to person or property in order to recover civil damages. Rather, it affirmed because of a lack of evidence that the conduct occurred because of their race. This case does not aid Plaintiffs.

Absent some evidence that Plaintiffs Satchel or Adams suffered injury to their person or injury to their property, they cannot recover civil damages under the statute. Plaintiffs have failed to identify any such evidence, and merely refer to verbal threats which are insufficient under the statute. The Court shall grant summary judgment in favor of both Chris and Amanda Gusek as to this claim.

**V.      Intentional Infliction Of Emotional Distress Claims**

In Count VIII of Plaintiff's First Amended Complaint, each of the three Plaintiffs assert claims under Michigan law for intentional infliction of emotional distress, against eight different Defendants. That count, however, does not specify the conduct that is the subject of this claim, as to any of the individual Defendants. Rather, it references all of the other allegations in the complaint – which consist of 184 paragraphs that span 41 pages.

Following the October 26, 2017 Order For Partial Dismissal Of Claims (D.E. No. 46), Plaintiff Satchel now asserts this claim against Cook, Steele, Mocniak, Kilmer, Chris Gusek, and Amanda Gusek. Adams now asserts this claim against Chris Gusek and Amanda Gusek. Merten now asserts this claim against Mocniak, Cook, and Steele.

As this Court has previously explained, the law as to a claim for intentional infliction of emotional distress is as follows:

> Under Michigan law, the essential elements of a claim of intentional infliction of emotional distress are: 1) extreme and outrageous conduct, 2) intent or recklessness, 3) causation, and 4) severe emotional distress. *Graham v. Ford,* 237 Mich.App. 670, 674, 604 N.W.2d 713 (2000); *Webster v. United Auto Workers, Local 51,* 394 F.3d 436, 442 (6th Cir.2005). In ruling on such a claim, it is initially for the trial court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous to permit recovery. *Webster,* 394 F.3d at 442. If reasonable minds may differ, however, "it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct is sufficiently extreme and outrageous to result in liability. *Id.*
>
> "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham,* 237 Mich.App. at 674, 604 N.W.2d 713.

*Regets v. City of Plymouth,* 2013 WL 1414243, at *22 (E.D. Mich. Apr. 8, 2013), *aff'd,* 568 F. App'x 380 (6th Cir. 2014).

Defendants' Motion for Summary Judgment asserts that Defendants are entitled to

summary judgment because, although three different Plaintiffs are asserting this claim against six different individuals, Plaintiffs have not specified the alleged conduct by any of the Defendants that forms the basis of this claim. Defendants assert that they are entitled to summary judgment because "Plaintiffs cannot demonstrate that any of the individual Defendants engaged in extreme and outrageous conduct as to be regarded as utterly intolerable in a civilized community." (Defs.' Br. at 20). Defendants also assert that summary judgment is warranted because the three Plaintiffs cannot present evidence to establish that they incurred severe emotional distress, based upon their deposition testimony.

In response to Defendants' properly-supported motion, Plaintiffs recite the elements of the tort under Michigan law. Plaintiffs then state that "[i]n the present case, the Defendants extreme and outrageous conduct directed at the Plaintiffs was intentional on their part as a systematic course of conduct designed to harass, intimidate, threaten, embarrass, and put them in a false light in the community," without specifying the alleged conduct that any of the various six Defendants engaged in that would support this claim, asserted by these three Plaintiffs. (Defs.' Br. at 25). Plaintiffs also fail to respond to Defendants' argument that they cannot establish that they suffered severe emotional distress based upon their own deposition testimony.

The Court shall grant summary judgment in favor of the remaining Defendants as to this claim. In response to Defendants' properly-supported motion, Plaintiffs have not even identified the alleged conduct by each of the various Defendants that would support this claim, much less directed the Court to evidence of such conduct.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED and the remaining claims in this action are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  June 20, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 20, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager